# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PEERLESS INSURANCE COMPANY, a New Hampshire Company;
GOLDEN EAGLE INSURANCE CORPORATION, a California
Corporation; LIBERTY MUTUAL INSURANCE COMPANY, a
Massachusetts Company, and DOES 1 through 20,
inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SHAW MORTGAGE CORPORATION dba PATIOSOURCE AND THE
NATURAL TOUCH, a California Corporation.

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**F I L E D**
Clerk of the Superior Court

**MAR 12 2008**

BY: B. Follis        Clerk

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Diego Superior Court
330 West Broadway

San Diego, CA 92103
Central

CASE NUMBER:
*(Número del Caso):* 37-2007-84451-CU-BC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Karen R. Frostrom  SB# 207044        619-236-9363    619-236-9653
Thorsnes Bartolotta McGuire
2550 Fifth Avenue, Eleventh Floor
San Diego, CA 92103

DATE: **MAR 12 2008**        Clerk, by **B. FOLLIS**        , Deputy
*(Fecha)*        *(Secretaria)*        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* LIBERTY MUTUAL INSURANCE COMPANY, A MASSACHUSETTS COMPANY

   under: ☑ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)        ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 3/19/08

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

**EXHIBIT 1**

1  VINCENT J. BARTOLOTTA, JR., ESQ.  SB#055139
   KAREN R. FROSTROM,.ESQ.  SB#207.044
2  THORSNES BARTOLOTTA  McGUIRE
   2550 Fifth Avenue, Eleventh Floor
3  San Diego, CA  92103
   Phone: (619) 236-9363    Fax:  (619) 236-9653
4
   Attorneys for Plaintiff SHAW MORTGAGE CORPORATION
5  dba PATIOSOURCE & THE NATURAL TOUCH

6

7

8

9

10              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

11                            CENTRAL DIVISION

12
   SHAW MORTGAGE CORPORATION        )   Case No. 37-2007-00084451-CU-B*-CTL
13 dba PATIOSOURCE & THE NATURAL    )
   TOUCH, a California Corporation   )   **FIRST AMENDED COMPLAINT FOR:**
14                                   )
                Plaintiffs,          )   **(1) BREACH OF CONTRACT;**
15                                   )   **(2) TORTIOUS BREACH OF IMPLIED**
        v.                           )   **COVENANT OF GOOD FAITH AND**
16                                   )   **FAIR DEALING; and**
   PEERLESS INSURANCE COMPANY, a    )   **(3) DECLARATORY RELIEF**
17 New Hampshire Company; GOLDEN EAGLE )
   INSURANCE CORPORATION, a California )
18 Corporation; LIBERTY MUTUAL       )   (GENERAL CIVIL CASE)
   INSURANCE COMPANY, a Massachusetts )
19 Company; and DOES 1 through 20, inclusive, )
                                     )
20              Defendants.          )
   _____   )
21
22       Plaintiff SHAW MORTGAGE CORPORATION dba PATIOSOURCE & THE NATURAL

23 TOUCH ("PLAINTIFF") alleges as follows:

24       1.      Plaintiff is and was at all times mentioned herein, a corporation duly licensed,

25 organized and existing under the laws of the State of California, with its principal place of business

26 located in the San Diego County, California.

27       2.      Plaintiff is informed and believes, and thereon alleges, that Defendants PEERLESS

28 INSURANCE COMPANY, GOLDEN EAGLE INSURANCE CORPORATION LIBERTY

                                         1

F  I  L  E  D
Clerk of the Superior Court

FEB 28 2008

BY: B. Follis,        Clerk

investigation is not complete and discovery and investigation are ongoing, plead each allegation, cause of action, claim or remedy in this Complaint without prejudice to any contradictory, current, subsequent or previous allegation, claim or remedy after the true and correct facts have been discovered, pled, proven, or Plaintiffs have elected among available alternative remedies. Further, Plaintiff's pleading or omission of any alternative theory, cause of action or remedy, shall not constitute an election of one or more theories, claims or remedies over, in place of or the exclusion to any other.

**PLAINTIFF'S LOSS**

**Operation of The Natural Touch and Patio Source:**

7.      Prior to September 2005, Steve and Jan Shaw operated The Natural Touch and Patio Source as a rented retail location located at 9050 Kenamar Drive, San Diego, California. The Shaws had purchased the businesses following their decision to find a business where they could work together, never put a tie on again, and that would provide the ability to work creatively. While the businesses were operating at a loss at the time of acquisition, the Shaws built them up until they were very successful and able to rely largely on word of mouth to obtain interior and exterior design clients.

8.      The Natural Touch predominately sells silk trees, plants, floral designs and seasonal decorations. Its stock consists of custom-designed product available on both a walk-in and special order basis. These decorations are high-end and made from very realistic and durable materials. The Natural Touch business is seasonal in that it has a significantly increased production and sales during the holiday season and, to a lesser extent, during the summer. Examples of The Natural Touch products are depicted below:



3

---

Complaint for (1) Breach of Contract, (2) Tortious Breach, and (3) Declaratory Relief     Doc#: 487957.1

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17
18



19    9.    The Natural Touch also engages in home design work. It developed, over time, an

20  extensive catalog showing home design projects previously completed for customers. The

21  customers' ability to review this portfolio of prior work was a key part of engaging new home design

22  clients. Those portfolios were destroyed in the fire and simply cannot be replaced until The Natural

23  Touch is retained to engage in future design work, which work is difficult to obtain without a

24  portfolio. The Natural Touch is suffering from this vicious cycle.

25    10.    Patio Source, out of the same retail center, sells and showcases high-end indoor and

26  outdoor furniture and accessories. That furniture is sold by careful staging throughout the store to

27  display it to its best impact, mixed with accessories in a way so as to suggest the combined use of

28  that furniture and those accessories. This business is seasonal in that most sales relate to the spring

4

1   and summer seasons.

2   **The Destruction of the Businesses:**

3      11.     On or about December 26, 2005, the store was completely destroyed in a fire caused

4   by an electrical short. The fire destroyed the building and also all merchandise, back stock, raw

5   supplies, marketing materials, photographs, displays, vendor contacts, customer lists, valuable

6   papers, documents and other business items. As to many of these items, Plaintiff did not have any

7   backup copies. This was unfortunately true as to information kept on computers, including email

8   records, financial information and marketing materials. The fire was thorough and devastating:





5

---

12.     As a result of the fire, the Shaws were forced to relocate their stores to a temporary, inferior location and come out of pocket to replenish merchandise, stock, raw supplies, displays, marketing materials, and other business goods. Much of the valuable property that was destroyed in the fire could simply not be replaced or duplicated. The Shaws were required to start from scratch with nothing to show for years of operation of a successful business. On December 25, 2005, the Shaws ran a fully operational store with a history of information and a well-developed organizational structure for information processing and marketing. By the end of December 26, 2005, they had nothing. There were no products. There were no records of historical purchases. There were no marketing materials. There were no financial records. There were no computers. This fire decimated this successful business.

**The Revival of the Businesses:**

13.     Notwithstanding the wholesale devastation, the Shaws' response to the fire was admirable and immediate. They quickly located available space as close to the burned building as possible and opened a temporary store so that their customers would not be directed elsewhere while the building was rebuilt. The temporary space was inferior to the original store and the Shaws had to overcome many obstacles, from poor lighting to a lack of space to properly display the product. The Shaws were also required to process insurance paperwork, to reconstruct their financials, to reconstruct their marketing materials, and to recreate their customer lists – while still trying to operate two full-time businesses. There was significant uncertainty at the beginning as to where, if at all, the Shaws would be able to reopen the store.

14.     As a result of the business matters described above, including responding to the demands of the insurance company during the loss calculation period, the Shaws were unable to attend, purchase, and/or store items from the annual trade shows held by Plaintiff's vendors during early 2006. There simply was not time, money, or space available for this work. There was also a lack of knowledge as to whether or where the stores would be reopened and therefore no knowledge as to the quantity of materials needed for the upcoming months. Unfortunately, these are seasonal businesses. Once the trade shows have passed, a business seeking to resume operations is hampered in its ability to stock product for the season. Accordingly, Plaintiff was unable to repurchase and/or

1    replace much of its destroyed merchandise, stock, raw supplies, displays, marketing materials, and

2    other business goods in time to meet the needs of its seasonal clients.

3        15.    In addition, as a result of the destruction of the property, goods, raw materials,

4    customer lists, vendor contacts, photographs, displays, and marketing materials in the fire, the Shaws

5    were, and continue to be, unable to demonstrate, identify, or showcase its design services and

6    capabilities to prospective customers.  This inability to market and sell the custom design services

7    caused considerable business losses.  Custom design service is a niche market that Plaintiff had

8    worked hard to develop over the years.  Complete destruction of that market has forced Plaintiff to

9    start to rebuild that market from nothing except memories of the past.

10        16.    Despite the Shaws' best efforts to have their businesses operating as quickly and

11    effectively as possible, they were not able to have the inventory, merchandise, displays, marketing

12    materials, raw materials, customer lists, valuable papers, documents, and vendor contacts up to the

13    level required to target and address the needs of their customers.  As a result, Plaintiff missed the

14    opportunity to fully participate in the buying seasons of spring and summer 2006 and experienced a

15    substantial decline in its fall and Christmas 2006 sales.  There have been ongoing losses related to

16    the loss of the custom design clientele and the inability to show examples of prior work in order to

17    obtain new custom design clients.

18        17.    Plaintiff's inability to fully advertise and participate in the above-mentioned buying

19    seasons have caused Plaintiff to suffer significant business losses covered by the insurance policies

20    issued by the Defendant Insurers.

21    **The Insurance Policies:**

22        18.    On or about September 22, 2005, Defendant Insurers made, executed and delivered

23    one or more insurance policies of commercial property coverage to Plaintiff including, without

24    limitation, the following Policy No. CBP9772003, effective from 9/22/2005 to 9/22/2006, attached

25    hereto as Exhibit "A."

26        19.    The Policy was made and executed to insure direct physical losses, which included

27    coverage for inventory, stock, materials and merchandise carried and stored at the Premises.  The

28    Policy was also made and executed to compensate Plaintiff for any and all business losses and extra

Complaint for (1) Breach of Contract, (2) Tortious Breach, and (3) Declaratory Relief          Doc#:487957.1

1   expenses incurred as a result of a covered cause of loss. It is undisputed that a fire is a covered cause

2   of loss under the terms of the Policy.

3        20.    The Policy provides, in relevant part:

4          **A.**    **Coverage**

5               **1.**    **Business Income**

6                  Business Income means the:

7                     a. Net Income (Net Profit or Loss before income taxes) that would
have been earned or incurred; and

8

9                     b. Continuing normal operating expenses incurred, including payroll.

               For manufacturing risks, Net Income includes net sales value of

10                 production.

11              **3.**    **Loss Determination**

12                        \*   \*   \*

13                   **c.**      **Resumption of Operations**

14                        \*   \*   \*

15                   **d.** If you do not resume "operations," or do not resume "operations"
as quickly as possible, we will pay based on the length of time it would

16                   have taken to resume "operations" as quickly as possible.

17  (Form CP0030-0402.)

18       21.    In addition to obtaining the Policy for commercial property coverage with Defendant

19  Insurers, Plaintiff also obtained an upgraded policy endorsement referred to as the "Retail Platinum

20  Endorsement" ("the Endorsement"). This Endorsement purported to provide additional protection,

21  including explicit protections should the Plaintiff's business losses extend beyond the normal

22  contractual time limits. **These protections were purchased by Plaintiff at a premium policy**

23  **payment.**

24       22.    At the time Defendant Insurers solicited and prepared the Policy and the

25  Endorsement, Defendant Insurers knew, either directly or through its agents or employees, of the

26  seasonal nature of Plaintiff's sales and purchasing as well as the importance of Plaintiff's marketing

27  materials, customer lists, vendor contacts and displays. Based on such knowledge, Defendant

28  Insurers prepared the Policy and the Endorsement to adequately insure Plaintiff with the intention

8

1    that in the event of a disaster, Plaintiff would be placed back in the same position as it occupied prior
2    to the disaster.

3        23.    Pursuant to the terms of the Policy and the Endorsement, Plaintiff quickly notified
4    Defendant Insurers of the fire as well as the resulting losses and damages. Plaintiff also cooperated
5    with all requests made by Defendant Insurers during the period of calculating the actual losses.

6        24.    The Shaws' landlord was able to complete the rebuild quickly and in the fall of 2006,
7    they were able to move their business back into the premises previously destroyed by the fire. This
8    was good news and bad news. They now had sufficient space to continue the business operations
9    destroyed in December 2005. However, they did not have sufficient inventory to fill the space or to
10   adequately stock their Christmas goods for the season. As a result, total sales suffered.

11       25.    Up until the fall of 2006, Defendant Insurers remitted payment for some of the
12   various covered losses, damages and expenses under the terms of the Policy and the Endorsement.

13       26.    The terms of the Policy and the Endorsement required Defendant Insurers to provide
14   Plaintiff with coverage for business losses as defined, for the time during which the Plaintiff
15   operations could not be resumed at full volume. The Endorsement arguably sets an outside limit of
16   fifteen months after resumption of partial operations. Notwithstanding, Defendant Insurers ignored
17   the evidence that Plaintiff continued to suffer losses following the partial resumption of operations,
18   which losses related directly back to the fire, and cut off loss payments only thirty days after Plaintiff
19   resumed its partial operations. In the fall of 2007, Defendant Insurers notified Plaintiff that no
20   further sums would be forthcoming, leaving Plaintiff with no choice but to pursue litigation.

21       27.    The failure of Defendant Insurers to satisfy their obligations under the Policy and the
22   Endorsement by payment of business income losses incurred by Plaintiff was, and is, wrongful and
23   without legal justification. Defendant Insurers intentionally withheld coverage with conscious
24   disregard for Plaintiff's rights to obtain coverage under the terms of the Policy and the Endorsement.

25       28.    In failing and/or refusing to appropriately provide coverage for Plaintiff's losses, the
26   Defendant Insurers have breached the relevant insurance contracts. As a result of this breach,
27   Plaintiff has suffered, and continues to suffer, damages, including, but not limited to, continued
28   businesses losses in an amount to be proven at trial but in excess of the minimum jurisdictional

9

1 | amount of this Court.

2 | ## FIRST CAUSE OF ACTION
3 | ### BREACH OF CONTRACT
Against All Defendants

4 | 29.    Plaintiff incorporates by reference each and every allegation contained in Paragraphs
5 | 1-28 above as though fully set forth herein.

6 | 30.    Plaintiff is informed and believes, and thereon alleges, that Defendant Insurers have
7 | issued insurance policies as attributable to them herein. Said policies sold do in fact, at a minimum,
8 | cover one or more losses incurred by Plaintiff and require Defendant Insurers to provide coverage for
9 | said losses consistent with the terms set out in the Policy and the Endorsement.

10 | 31.    Plaintiff is informed and believes, and thereon alleges, that the Policy and the
11 | Endorsement were in full force and effect at all times relevant hereto. Plaintiff performed each and
12 | every condition, covenant and/or promise required to be performed in accordance with the terms and
13 | conditions of each written contract, except to the extent Plaintiff was prevented by Defendant
14 | Insurers or excused from such performance or said conditions, covenants and promises have been
15 | waived or accrued.

16 | 32.    On multiple occasions Plaintiff notified Defendant Insurers of its obligation and duty
17 | to provide compensation for Plaintiff's business losses pursuant to the terms of the Policy and the
18 | Endorsement.

19 | 33.    Within the last ninety (90) days, Defendant Insurers affirmatively denied the coverage
20 | due to Plaintiff under the Policy and the Endorsement without proper justification and despite
21 | Plaintiff's multiple requests for coverage under the Policy and the Endorsement.

22 | 34.    As a result, Plaintiff has been forced to incur substantial business losses in excess of
23 | nine hundred thousand dollars because of the failure of Defendant Insurers to cover Plaintiff for the
24 | losses caused by an occurrence falling within the coverage of the Policy and the Endorsement
25 | referred to herein, in excess of any amounts previously paid under the same coverage.

26 | 35.    Plaintiff is informed and believes, and thereon alleges that Defendant Insurers
27 | breached the insurance policies by failing to provide coverage to Plaintiff to compensate Plaintiff
28 | fully for the business losses incurred. Plaintiff further alleges, based on information and belief, that

10

1  Defendant Insurers breached these insurance policies by not reasonably or diligently interpreting and

2  applying the referenced policies to the loss it applied to Plaintiff's business.

3       36.    As a direct and proximate result of the breaches by Defendant Insurers, Plaintiff has

4  suffered substantial damages and incurred significant business losses, which have constituted a

5  significant financial economic injury, including but not limited to, the failure to pay the benefits due

6  under the policies and the consequences to Plaintiff's business as well.

7  **SECOND CAUSE OF ACTION**

TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

8  Against All Defendants

9       37.    Plaintiff incorporates by reference each and every allegation contained in Paragraphs

10  1-36 above as though fully set forth herein.

11       38.    Defendant Insurers at all material times had the duty to act fairly and in good faith to

12  Plaintiff in carrying out their responsibilities under their respective policies of insurance.

13       39.    Pursuant to the insurance policies, Defendant Insurers have implicit obligations to act

14  fairly and in good faith to Plaintiff, to promptly and reasonably investigate claims against Plaintiff,

15  and to make reasonable coverage decisions. The policies identified herein are subject to an implied

16  covenant of good faith and fair dealing such that no party will limit the rights of the other to obtain

17  the full benefits of the contract. Defendant Insurers, and each of them, have breached the implied

18  covenant of good faith and fair dealing when they failed or refused to provide coverage for the

19  business losses incurred as a result of the fire, and to provide necessary coverages owed under the

20  Policy and the Endorsement when tendered, and at all material times thereafter, not withstanding

21  repeated requests to do so.

22       40.    Plaintiff is informed and believes, and thereon alleges, that Defendant Insurers

23  breached their respective obligations to act fairly and in good faith toward Plaintiff by committing,

24  among other things the following acts and omissions:

25            A.    Failing to conduct a prompt and reasonable investigation of Plaintiff's claim

26                 for continued coverage beyond the thirtieth day of re-occupancy;

27            B.    Causing the insured Plaintiff severe financial hardship by refusing to cover

28                 Plaintiff's business losses;

11

C.     Failing to give a reasonable interpretation to the provisions of the Policy and the Endorsement, failing to reasonably apply provisions of the Policy and the Endorsement to the claims, and unreasonably refusing to acknowledge that the Endorsement provided for coverage during the time that the business failed to resume full operations, at an outside limit of 15 months of coverage for business losses;

D.     Interpreting the provisions of the policies and the factual circumstances so as to resolve ambiguities and uncertainties against Plaintiff and to favor their own economic interests; and

E.     Pursuing such a course and pattern of conduct and practice in violation of the terms of the policies and California law with the knowledge, understanding, consent, and approval of Defendant Insurers' respective managing officers, directors, agents and employees.

41.     The foregoing acts and omissions were unreasonable, malicious, fraudulent, oppressive and despicable.

42.     The respective officers, directors and/or managing agents and/or employees of Defendant Insurers participated in, authorized and/or ratified the wrongful conduct of said Defendant Insurers as alleged above.

43.     As a direct and proximate result of the breaches by Defendant Insurers, Plaintiff has suffered substantial damages including, but not limited to, lost business income, which have constituted a significant financial economic injury. Plaintiff has further been forced to expend significant attorneys' fees and legal costs in order to secure the insurance coverage to which they were and are entitled and which was, and continues to be, wrongfully withheld. Therefore, Plaintiff is entitled to recovery of all such attorneys' fees and costs incurred in this action under the principals set forth in *Brandt v. Superior Court* (1985) 37 Cal.3d 813.

44.     Plaintiff is entitled to recover, as damages against Defendant Insurers, and each of them, all the covered business losses, which they have endured as a result of the injury, together with interest thereon. Plaintiff has suffered damages, and will continue to suffer damages, within the

12

1  jurisdiction of this Court according to proof.

2      45.    The above-described conduct of Defendant Insurers has been and continues to be

3  unreasonable, capricious and arbitrary, and constitutes breach of the covenant of good faith and fair

4  dealing contained in each and all of the insurance policies referred to herein.  The above-described

5  conduct further constitutes malicious, oppressive and despicable conduct and conscious disregard of

6  Plaintiff's rights, and stems from improper and evil motives, including Defendant Insurers' desire to

7  reduce or avoid their obligations to Plaintiff so as to justify an award of punitive and exemplary

8  damages.

9                    **THIRD CAUSE OF ACTION**
                    DECLARATORY RELIEF
10                   Against All Defendants

11      46.    Plaintiff incorporates by reference each and every allegation contained in Paragraphs

12  1- 45 above as though fully set forth herein.

13      47.    Coverage exists under the Policy and the Endorsement issued by Defendant Insurers

14  for the business income lost as a result of the Loss and Defendant Insurers have a duty under the

15  Policy and the Endorsement to compensate Plaintiff for business losses incurred after Plaintiff was

16  permitted to reoccupy the Premises.

17      48.    Defendant Insurers have denied Plaintiff coverage for its lost business income.

18  Defendant Insurers have also denied any duty or obligation to compensate Plaintiff for its lost

19  business income.

20      49.    An actual coverage controversy has therefore arisen between Plaintiff and Defendant

21  Insurers regarding Defendant Insurers' obligations and duties owed under the Policy and the

22  Endorsement.

23      50.    By reason of the foregoing, a declaratory judgment is both necessary and proper in

24  order to set forth and determine, the rights and obligations between Plaintiff on the one hand, and

25  Defendant Insurers, on the other hand, with respect to coverage for Plaintiff's injuries and damages

26  pursuant to the Policy and the Endorsement.

27      51.    Accordingly, Plaintiff requests that the Court make a judicial declaration as to

28  Defendant Insurers' rights and obligations under the Policy and the Endorsement.

13

1    WHEREFORE, Plaintiff prays for judgment against Defendant Insurers, and each of them, as

2  follows:

3    *First Cause of Action:*

4    1.    For compensatory damages according to proof;

5    2.    For attorneys' fees and costs of suit in obtaining the benefits owed under the

6  respective policies, pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, according to proof;

7    3.    For costs of suit herein;

8    4.    For all such other and further relief as the Court may deem just and proper.

9    *Second Cause of Action:*

10    1.    For compensatory damages according to proof;

11    2.    For attorneys' fees and costs of suit in obtaining the benefits owed under the

12  respective policies, pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, according to proof;

13    3.    For punitive damages in an amount appropriate to punish Defendant Insurers and

14  deter others from similar misconduct;

15    4.    For costs of suit herein;

16    5.    For all such other and further relief as the Court may deem just and proper.

17    *Third Cause of Action:*

18    1.    For declaratory relief;

19    2.    For attorneys' fees and costs of suit in obtaining the benefits owed under the

20  respective policies, pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, according to proof;

21    3.    For costs of suit herein;

22    4.    For all such other and further relief as the Court may deem just and proper.

23  Dated: February 28, 2008                    THORSNES BARTOLOTTA McGUIRE

24

25                                   By_____

26                                   Vincent J. Bartolotta, Jr.
                                     Karen R. Frostrom
                                     Attorneys for Plaintiff SHAW MORTGAGE
27                                   CORPORATION dba PATIOSOURCE & THE
                                     NATURAL TOUCH

28

14

VINCENT J. BARTOLOTTA, JR., ESQ. SB#055139
KAREN R. FROSTROM, ESQ. SB#207044
THORSNES BARTOLOTTA McGUIRE
2550 Fifth Avenue, Eleventh Floor
San Diego, CA 92103
Phone: (619) 236-9363    Fax: (619) 236-9653

Attorneys for Plaintiff SHAW MORTGAGE CORPORATION
dba PATIOSOURCE & THE NATURAL TOUCH

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CENTRAL DIVISION

| | |
|---|---|
| SHAW MORTGAGE CORPORATION dba PATIOSOURCE & THE NATURAL TOUCH, a California Corporation | Case No. 37-2007-00084451-CU-BC-CTL |
| Plaintiffs, | **ADDENDUM TO FIRST AMENDED COMPLAINT** |
| v. | (GENERAL CIVIL CASE) |
| PEERLESS INSURANCE COMPANY, a New Hampshire Company; GOLDEN EAGLE INSURANCE CORPORATION, a California Corporation; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Company; and DOES 1 through 20, inclusive, | Assigned to: Honorable William R. Nevitt, Jr. Department: 64 Complaint filed: December 21, 2007 |
| Defendants. | |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that the attached Exhibit A, referenced on page 7 of the First Amended Complaint filed herein on February 28, 2008, and consisting of Policy No. CBP9772003, was inadvertently omitted from the complaint when filed.

///

///

///

1

ADDENDUM TO FIRST AMENDED COMPLAINT

Doc#: 487957.1

Dated: March 13, 2008                    THORSNES BARTOLOTTA McGUIRE


By_____
    Vincent J. Bartolotta, Jr.
    Karen R. Frostrom
    Attorneys for Plaintiff SHAW MORTGAGE
    CORPORATION dba PATIOSOURCE & THE
    NATURAL TOUCH

2

ADDENDUM TO FIRST AMENDED COMPLAINT                    Doc#: 487957.1

# WATERIDGE
## INSURANCE SERVICES

C00099

# Table of Contents



**GENERAL LIABILITY POLICY**
Carrier: Golden Eagle Insurance Corp.
Policy Term: 9/22/05 – 9/22/06
Policy Number: CBP9772033



**COMMERCIAL PROPERTY POLICY**
Carrier: Golden Eagle Insurance Corp.
Policy Term: 9/22/05 – 9/22/06
Policy Number: CBP9772033



**COMMERCIAL
UMBRELLA POLICY**
Carrier: Mt. Vernon Fire Insurance
Policy Term: 1/24/05 – 1/24/06
Policy Number: CUP2110370



**COMMERCIAL AUTO POLICY**
Carrier: Progressive Insurance Co.
Policy Term: 11/10/05 – 11/10/06
Policy Number: 083585021



**ENDORSEMENTS**

C00100



RENEWAL

**Golden Eagle Insurance**
Member of Liberty Mutual Group

**EFFECTIVE DATE:** 09/22/2005

| Policy Number: CBP9772033 | Prior Policy: 9772033 |
|---|---|

**Billing Type:** DIRECT BILL

**Coverage Is Provided In**    PEERLESS INSURANCE COMPANY - A STOCK COMPANY

| Named Insured and Mailing Address: | Agent: |
|---|---|
| SHAW MORTGAGE CORPORATION<br>(DBA) THE NATURAL TOUCH<br>9050 KENAMAR DRIVE<br>SAN DIEGO  CA   92121 | WATERIDGE INSURANCE SERVICES<br>10717 SORRENTO VALLEY RD<br>SAN DIEGO  CA   92121 |
| REFER TO NAMED INSURED SCHEDULE | Agent Code:  4292657      Agent Phone: (858)-452-2200 |

- PEERLESS INSURANCE COMPANY - A STOCK COMPANY
  P.O. Box 85826
  San Diego, CA 92186-5826

### COMMON POLICY DECLARATIONS

In return for the payment of premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**POLICY PERIOD: From :** 09/22/2005   **To:** 09/22/2006    at 12:01 AM Standard Time at your mailing address shown above.

**FORM OF BUSINESS:** CORPORATION

**BUSINESS DESCRIPTION:** WHOLESALE & RETAIL SALES OF SILK FLOWERS/PLANTS

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

|  | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $     6,165.00 |
| Boiler and Machinery Coverage Part | INCLUDED |
| Commercial General Liability Coverage Part | INCLUDED |
| Total Premium for all Liability Coverage Parts | $    12,829.00 |
| Terrorism Risk Insurance Act of 2002 Coverage | REJECTED |
| **Total Policy Premium** | $    18,994.00 |

### FORMS AND ENDORSEMENTS

**Forms and Endorsements made a part of this policy at time of issue:**
Applicable Forms and Endorsements are omitted if shown in specific Coverage Part/Coverage Form Declarations

| Form Number | Description |
|---|---|
| IL017 | - 1198 COMMON POLICY CONDITIONS |
| IL0940 | - 0102 EXCLUSION OF WAR, MILITARY ACTION AND TERRORISM |

C00101

17-57 (06/94)

AGENT COPY

## COMMON POLICY DECLARATIONS (continued)

### FORMS AND ENDORSEMENTS

**Forms and Endorsements made a part of this policy at time of issue:**
Applicable Forms and Endorsements are omitted if shown in specific Coverage Part/Coverage Form Declarations

| Form Number | | Description |
|---|---|---|
| IL0953 | - 1102 | EXCLUSION OF CERETIFIED ACTS OF TERRORISM |
| CG2169 | - 0102 | WAR OR TERRORISM EXCLUSION |
| CG2173 | - 1202 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| 17-58 | - 0694 | NAMED INSURED SCHEDULE |
| GECPD910 | - 0689 | PUNITIVE DAMAGES |
| IL0003 | - 0702 | CALCULATION OF PREMIUM |
| IL0021 | - 0702 | NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM) |
| IL0103 | - 0702 | CALIFORNIA CHANGES - ACTUAL CASH VALUE |
| IL0104 | - 0204 | CALIFORNIA CHANGES |
| IL0270 | - 1104 | CANCELLATION AND NONRENEWAL |
| IL0935 | - 0702 | EXCLUSION OF CERTAIN COMPUTER RELATED LOSSES |

Countersigned:    By_____    _____

                                          Authorized Representative                                          Date

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyrighted material of Insurance Services Office, Inc. with its permission. Copyright, Insurance Services Office, Inc. 1982,1983, 1984, 1985.

Date Issued: 09/06/2005

17-57 (06/94)





RENEWAL

**Golden Eagle Insurance** ™
Member of Liberty Mutual Group

ning a part of

| Policy Number: CBP 9772033 | |
| --- | --- |
| Coverage Is Provided In  **PEERLESS INSURANCE COMPANY - A STOCK COMPANY** | |
| **Named Insured:**<br>SHAW MORTGAGE CORPORATION<br>(DBA) THE NATURAL TOUCH<br>REFER TO NAMED INSURED SCHEDULE | **Agent:**<br>WATERIDGE INSURANCE SERVICES<br><br>**Agent Code:** 4292657      **Agent Phone:** (858)-452-2200 |

## NAMED INSURED SCHEDULE

**First  Named Insured:**

**Name/Address**                    **Form of Business:** CORPORATION

SHAW MORTGAGE CORPORATION (DBA) THE NATURAL TOUCH

(DBA) PATIOSOURCE
9050 KENAMAR DRIVE
SAN DIEGO CA   92121

**Date Issued:**   09/06/2005

C00103

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

C00104

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

**Policy Number:** CBP 9772033

**Coverage Is Provided In** PEERLESS INSURANCE COMPANY - A STOCK COMPANY

| Named Insured: <br> SHAW MORTGAGE CORPORATION <br> (DBA) THE NATURAL TOUCH <br> REFER TO NAMED INSURED SCHEDULE | Agent: <br> WATERIDGE INSURANCE SERVICES <br><br> **Agent Code:** 4292657    **Agent Phone:** (858)-452-2200 |
|---|---|

Terrorism Risk Insurance Act of 2002 Premium: $       112

# TERRORISM INSURANCE PREMIUM DISCLOSURE AND OPPORTUNITY TO ELECT COVERAGE

**WE ARE SENDING YOU THIS NOTICE BECAUSE YOU PREVIOUSLY REJECTED COVERAGE FOR LOSSES RESULTING FROM AN "ACT OF TERRORISM" AS DEFINED BELOW.**

**THIS NOTICE PROVIDES YOU WITH A LIMITED PERIOD OF TIME WITHIN WHICH YOU MAY PURCHASE THIS COVERAGE FOR YOUR RENEWAL POLICY.**

**PLEASE READ THIS NOTICE CAREFULLY AS IT CONTAINS IMPORTANT INFORMATION ABOUT THE TERRORISM RISK INSURANCE ACT OF 2002 AND YOUR OPTION TO ELECT TERRORISM INSURANCE COVERAGE.**

### THE TERRORISM RISK INSURANCE ACT OF 2002

The Terrorism Risk Insurance Act of 2002 ("TRIA 2002") establishes a temporary program to spread the risk of catastrophic losses from certain acts of terrorism between insurers and the federal government.

TRIA 2002 requires insurers to pay losses from certain acts of terrorism up to an amount equal to a percentage of its direct earned premium ("insurer deductible"). If an individual insurer's losses exceed this amount, the federal "Terrorism Risk Insurance Program" or "TRIP" will reimburse the insurer for 90% of losses paid in excess of the insurer deductible.

The provisions of the Act can limit our maximum liability for payment of losses from certified acts of terrorism. That determination will be based on a formula set forth in the law involving the national total of federally insured terrorism losses in an annual period and individual insurer participation in payment of such losses. If one or more certified acts of terrorism in an annual period causes the maximum liability for payment of losses from certified acts of terrorism to be reached, and we have satisfied our required level of payments under the law, then we will not pay for the portion of such losses above that maximum. However, that is subject to possible change at that time, as Congress may, under the Act, determine that payments above the cap will be made.

C00105

TRIA 2002 will expire on December 31, 2005, unless Congress acts to extend it. After this date, the federal government will no longer "certify" certain acts of terrorism or reimburse losses caused by "certified acts of terrorism." Due to the highly unpredictable and potentially catastrophic nature of terrorism losses, we will not provide coverage for terrorism losses after December 31, 2005 under the following circumstances:

1. There is a "TRIP Termination Event" such as (i) TRIP terminates; or (ii) TRIP is extended, but insurers are no longer required to offer terrorism coverage and one of the following also occurs: the percentage basis for the insurer deductible is increased; the percentage share of the government's share of losses is decreased; terrorism is redefined; or terrorism coverage is made subject to policy terms that differ from those applicable to other types of events or occurrences; and

2. We are permitted by state law to exclude losses caused by terrorism.

## MANDATORY AVAILABILITY OF COVERAGE FOR "ACTS OF TERRORISM"

TRIA 2002 requires insurers to offer coverage, through December 31, 2005, for losses resulting from "certified acts of terrorism" that could otherwise be excluded, and to specify the premium for this coverage.

TRIA 2002 also requires insurers to disclose the premium for losses that result from "certified acts of terrorism" where exclusions are not permitted by state law.

An "act of terrorism" means:

[A]ny act that is certified by the Secretary [of the Treasury], in concurrence with the Secretary of State, and the Attorney General of the United States

(i) to be an act of terrorism;

(ii) to be a violent act or an act that is dangerous to –

    (I) human life;

    (II) property; or

    (III) infrastructure;

(iii) to have resulted in damage within the United States, or outside of the United States in the case of –

    (I) an air carrier (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or

    (II) the premises of a United States mission; and

(iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

## WHAT YOU MUST DO TO ELECT TERRORISM INSURANCE COVERAGE

We are offering you the opportunity to add coverage to your renewal policy for losses resulting from an "act of terrorism" as defined above. If you elect to add this coverage, the coverage will be subject to all of the terms, definitions, exclusions and conditions contained in the policy and will end, where permitted by state law, with the expiration of TRIA 2002 on December 31, 2005.

IMPORTANT. If you elect to purchase coverage for "acts of terrorism," losses caused by war will still be excluded from coverage under your policy. Losses resulting from terrorist acts that the Secretary of the Treasury fails to certify as falling within the federal Terrorism Insurance Program, such as those that are the result of a terrorist act that was not committed on behalf of any foreign person or foreign government and which exceed an aggregate cost to the insurance industry of $25 million, will also be excluded where permitted by state law, unless such coverage is separately offered by the company and purchased by you.

You may elect to add this coverage to your policy. The premium charge that appears on the first page of this notice is only for coverage from the effective date of the policy through December 31, 2005 because TRIA 2002 is set to expire at that time. If neither of the "TRIP Termination Events" occurs, you will be billed for the remaining pro rata premium charge.

To add this coverage you must contact your agent before the date your policy renews. If the date we first get this offer to you is after the date of renewal or within fourteen (14) days of the date of renewal, you will have fourteen (14) days from the date we get this offer to you to add the coverage. By contacting your agent, the coverage will be added and your renewal policy will be endorsed and billed accordingly.

THE SUMMARY OF THE ACT AND THE OFFER TO ADD THE COVERAGE TO YOUR POLICY CONTAINED IN THIS NOTICE IS NECESSARILY GENERAL IN NATURE. YOUR POLICY CONTAINS SPECIFIC TERMS, DEFINITIONS, EXCLUSIONS AND CONDITIONS. IN CASE OF ANY CONFLICT, YOUR POLICY LANGUAGE WILL CONTROL THE RESOLUTION OF ALL COVERAGE QUESTIONS. PLEASE READ YOUR POLICY CAREFULLY.

If you have any questions regarding this notice, please contact your agent.

C00107

# IMPORTANT INFORMATION

## Consumer Affairs – California

Because of the complicated nature of the insurance business, there may be times when you will have questions regarding your coverage or the premium charged, or a problem may occur with your policy. If this occurs we urge you to contact either your agent or broker to answer your question or resolve your problem. However, if you are unable to receive a satisfactory answer or resolution to your problem, please contact us directly:

**Golden Eagle Insurance Corporation**
**The Netherlands Insurance Company**
**The Peerless Insurance Company**

Underwriting: 1-800-444-4452
Billing: 1-800-672-8130
Property/ Casualty Claims: 1-800-933-2453
Workers Compensation Claims: 1-800-603-6438
All Other Calls: 619-744-6000

If you are still not satisfied, you may contact the following State Agency:

**California Department of Insurance**
300 South Spring Street
Los Angeles, CA 90013

Toll Free Number: 1-800-927-HELP (Calif. only)

C00108

# IMPORTANT NOTICE TO POLICYHOLDERS

With respect to insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
COMMERCIAL PROTECTOR® LIABILITY COVERAGE FORM
COMMERCIAL UMBRELLA LIABILITY POLICY

Your liability insurance is being renewed at this time with the addition of the Lead Exclusion. This results in some clarifications and reductions in coverage.

Following is a summary of the exclusion. NO COVERAGE IS PROVIDED BY THIS SUMMARY nor can it be construed to replace any provision in your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

### LEAD EXCLUSION SUMMARY

A. **CLARIFYING CHANGES** – language has been added for the purpose of clarity but there is no change in coverage intent.

Coverage is not provided for:

(1) Any injury or damage arising out of any premises or operations involving the mining, processing, manufacture, storage, installation, sale, distribution, removal, disposal, handling, inhalation, ingestion, absorption, use or existence of lead or lead contained in goods, products or materials.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order, or statutory or regulatory requirement that any insured or others in any way respond to, or assess the effects of lead or lead contained in goods, products or materials.

(b) Claim or suit by or on behalf of a governmental authority for damages because of any response to or assessment of the effects of lead or lead contained in goods, products or materials.

B. **REDUCTIONS IN COVERAGE** – language has been added which has resulted in reductions in coverage.

Coverage is not provided for any   injury or damage arising out of lead and lead contained in goods, products or materials if such injury or damage is included in the products or completed operations hazard.

C00109

# IMPORTANT POLICYHOLDER INFORMATION
## CONCERNING BILLING PRACTICES

**Dear Valued Policyholder:** This insert provides you with important information about our policy billing practices that may affect you. Please review it carefully and contact your agent if you have any questions.

**Premium Notice:** We will mail you a policy Premium Notice separately. The Premium Notice will provide you with specifics regarding your agent, the account and policy billed, the billing company, payment plan, policy number, transaction dates, description of transactions, charges/credits, policy amount balance, minimum amount, and payment due date. This insert explains fees that may apply to and be shown on your Premium Notice.

**Available Premium Payment Plans:**

- **Annual Payment Plan:** When this plan applies, you have elected to pay the entire premium amount balance shown on your Premium Notice in full. No installment billing fee applies when the Annual Payment Plan applies.

- **Installment Payment Plan:** When this plan applies, you have elected to pay your policy premium in installments (e.g.: quarterly or monthly installments – Installment Payment Plans vary by state). As noted below, an installment fee may apply when the Installment Payment Plan applies.

The Premium Payment Plan that applies to your policy is shown on the top of your Premium Notice. It is also shown on your Policy Declarations. Please contact your agent if you want to change your Payment Plan election.

**Installment Payment Plan Fee:** If you elected to pay your premiums in installments using the Installment Premium Payment Plan, an installment billing fee applies to each installment bill. The Installment billing charge will not apply, however, if you pay the entire balance due when you receive the bill for the first installment. Because the amount of the installment charge varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Dishonored Payment Fee:** Your financial institution may refuse to honor the premium payment withdrawal request you submit to us due to insufficient funds in your account or for some other reason. If that is the case, and your premium payment withdrawal request is returned to us dishonored, a payment return fee will apply. Because the amount of the return fee varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Late Payment Fee:** If we do not receive the minimum amount due on or before the date or time the payment is due, as indicated on your Premium Notice, you will receive a policy cancellation notice effective at a future date that will also reflect a late payment fee charge. Issuance of the cancellation notice due to non-payment of a scheduled installment(s) may result in the billing and collection of all or part of any outstanding premiums due for the policy period. Because the amount of the late fee varies from state to state, please consult your Premium Notice for the actual fee that applies. (Late Payment Fees are not applicable in some states.)

**Special Note:** Please note that some states do not permit the charging of certain fees. Therefore, if your state does not allow the charging of an Installment Payment Plan, Dishonored Payment or Late Payment Fee, the disallowed fee will not be charged and will not be included on your Premium Notice.

Once again, please contact your agent if you have any questions about the above billing practice information.

**Thank you for selecting us to service your insurance needs.**

C00110

ST-AL-305 (06/02)                                                                    Page 1 of 1

# NOTICE TO POLICYHOLDERS
## COMMERCIAL GENERAL LIABILITY
## BROADENINGS, RESTRICTIONS AND CLARIFICATIONS OF COVERAGE

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the significant broadenings, restrictions and clarifications of coverage that were made in each policy form and endorsement. This notice does not reference every editorial change made in these forms and endorsements.

Please read your policy, and the endorsements attached to your policy, carefully.

## PERSONAL AND ADVERTISING INJURY LIABILITY

### Form GECG 635 – Amendment of Coverage B Personal and Advertising Injury Liability

This endorsement revises the coverage afforded under Coverage B of the CG 00 01 (10 01) policy form and results in broadening coverage in certain respects, clarifies the coverage afforded there under and may, in certain states, result in a decrease in other respects. The impacts of the changes in the revision are very difficult to quantify and may differ in different states.

## BROADENINGS OF COVERAGE

By this endorsement, Coverage B is specifically extended to advertising via the Internet and/or through the insured's own Web site. Advertising via electronic transmissions and new media sources accessible to the public at large meets this definition.

## RESTRICTIONS IN COVERAGE

Trade dress infringement, a species of trademark infringement, is now also excluded from coverage. The definition of "personal and advertising injury" has been modified to delete reference to "trade dress" infringement as an enumerated offense. There is no duty to defend suits alleging trademark and/or trade dress infringement under Coverage B as modified by this endorsement.

Likewise, the definition of the term "advertising" has been modified to specify that the design, packaging or labeling of any goods or products do not themselves constitute advertising. Thus allegations of trade dress infringement in the appearance of goods alone do not trigger coverage under the insuring clause of Coverage B as modified by this endorsement.

## CLARIFICATIONS IN COVERAGE AND EDITORIAL REVISIONS

The endorsement includes an expanded definition of the term "advertising." This clarification is intended to comport with the legal decisions construing the plain meaning of that term as limited to information disseminated to the public at large. In states that have defined one-on-one sales solicitations or limited communications to a particular market segment as advertising, this definition could restrict coverage.

The new definition also specifies the media that constitute advertising and include new media outlets such as Internet advertising and advertising via a web site created and maintained by the insured.

C00111

# IMPORTANT NOTICE TO POLICYHOLDERS

This notice describes changes in your General Liability Gold Endorsement. This notice is not a part of your policy. For complete information on all coverages, terms, conditions and exclusions, please review your policy and its endorsements. If there is any conflict between your policy and this notice, <u>the provisions of the policy shall prevail.</u>

Your General Liability Gold endorsement coverage has been changed. Please note the following differences:

We have removed the restrictions and clarifications to Coverage B, Personal and Advertising Injury, from this endorsement. The coverage and any restrictions or extensions are covered in the current policy forms and endorsements.

Coverage C. Medical Payments section 2. Expenses for dental services have been deleted.

C00112

# NOTICE TO POLICYHOLDERS
## COMMERCIAL GENERAL LIABILITY
## BROADENINGS, RESTRICTIONS AND CLARIFICATIONS OF COVERAGE

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the significant broadenings, restrictions and clarifications of coverage that were made in each policy form and endorsement. This notice does not reference every editorial change made in these forms and endorsements.

Please read your policy, and the endorsements attached to your policy, carefully.

### INTERNET LIABILITY

Internet Liability has been listed separately because the changes in these coverage forms result in broadening in coverage in certain respects and may, in certain states, result in a decrease in other respects. The impacts of the changes in the revision are very difficult to quantify and may differ in different states.

### BROADENINGS OF COVERAGE

**CG 00 01 10 01 – Commercial General Liability Coverage Form**

- The definition of "coverage territory" in these coverage forms has been expanded to include personal and advertising injury offenses that take place via the Internet or other electronic means of communication, limited to some extent by the location where the suit is filed.

### RESTRICTIONS IN COVERAGE

**CG 00 01 10 01 – Commercial General Liability Coverage Form**
**CG 00 09 10 01 – Owners And Contractors Protective Liability Coverage Form**
**CG 00 37 10 01 – Products/Completed Operations Liability Coverage Form**

- The definition of "property damage" in these coverage forms has been revised to expressly state that electronic data is not tangible property. In most states, the question of whether electronic data is tangible has not been finally decided by the courts in the context of the prior policy language. We do not consider electronic data to be tangible, and therefore, do not consider damage to such data to be "property damage." In jurisdictions where such data is ruled not to be tangible property under prior forms, this change amounts to a reinforcement of current intent. However, to some, this change may be considered a decrease in coverage, if such property is held to be tangible under prior forms. For that reason, out of caution, we are listing it as a decrease. Also, the description of electronic data was added.

**CG 00 01 10 01 – Commercial General Liability Coverage Form**

- The former Coverage B Personal and Advertising Injury Liability exclusion pertaining to an insured whose business is advertising, broadcasting, publishing or telecasting has been revised to include Internet type businesses such as web-site designers, and Internet search, access, content and service providers. However, a provision has been added to the exclusion which states that placing of frames, borders or links, or advertising for the named insured or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

- An exclusion has been added to Coverage B for "personal and advertising injury" arising out of electronic chat rooms or bulletin boards.

### CLARIFICATIONS IN COVERAGE

**CG 00 01 10 01 – Commercial General Liability Coverage Form**

- These coverage forms have been clarified with respect to the definition of "personal and advertising injury" offenses such as slander, libel and invasion of privacy by specifically applying the word "publication" to include all types of publication, including those that are electronic.

- These coverage forms have been clarified with respect to the definition of "advertisement" to include notices that are published via the Internet and other forms of electronic communication. Also a statement was included in the definition specifying that the definition applies to advertising material only, when other material, as well as advertising, is put forth on a web-site.

© ISO Properties Inc., 2001

- An exclusion has been added to Coverage B Personal and Advertising Injury Liability to specifically reference the intellectual property rights of copyright, patent, trademark or trade secret. However, there is an exception to this exclusion for personal and advertising injury offenses of copyright, trade dress or slogan in an "advertisement"

- An exclusion has been added to Coverage B pertaining personal and advertising injury arising out the use of the Internet to divert another's customers away from a web-site.

## OTHER CHANGES

## BROADENINGS OF COVERAGE – COVERAGE FORMS

### CG 00 01 10 01 – Commercial General Liability Coverage Form

- The Criminal Acts exclusion under Coverage B Personal and Advertising Injury Liability in these coverage forms is changed to permit coverage for the vicarious liability of other insureds who have no knowledge of a criminal act.

- Section II – Who Is An Insured in these coverage forms is broadened to include trusts as Named Insureds when designated in the policy Declarations.

- Section II – Who Is An Insured in these coverage forms is broadened to automatically include "volunteer workers" as insureds, but only while performing duties related to the conduct of the insured's business.

## BROADENINGS OF COVERAGE – ENDORSEMENTS

### CG 04 36 10 01 – Limited Product Withdrawal Expense Endorsement

- When attached to the Commercial General Liability or Products/Completed Operations Liability Coverage Forms, this new endorsement provides reimbursement for certain expenses incurred because of a product withdrawal due to a recall or tampering.

### CG 20 37 10 01 – Additional Insured – Owners, Lessees Or Contractors – Completed Operations

- This endorsement provides a broadening of coverage by explicitly providing completed operations coverage for a specified additional insured.

### CG 22 62 10 01 – Underground Resources And Equipment Coverage

- This endorsement provides a broadening of coverage by adding an exception to the "damage to property" exclusion with respect to the care, custody or control provision. Coverage will be provided for such liability arising out of property damage included in the "underground resources hazard" for those oil or gas producing or servicing classes of risks otherwise excluded by CG 22 57 Exclusion – Underground Resources And Equipment Endorsement.

### CG 22 96 10 01 – Limited Exclusion – Personal And Advertising Injury – Lawyers

- This endorsement provides coverage for personal and advertising injury liability for lawyers when they perform activities that fall outside of a lawyer's professional services.

### CG 22 97 10 01 – Druggists – Broadened Coverage

- The endorsement CG 22 97, is introduced for use in the states that permit broader pharmacists duties and responsibilities.

### CG 24 22 10 01 – Amendment Of Coverage Territory – Worldwide Coverage

- When this endorsement is attached to a policy, the coverage is provided for offenses and occurrences anywhere in the world, subject to the limitation on where the suit is filed.

### CG 24 23 10 01 – Amendment Of Coverage Territory – Additional Scheduled Countries

- When this endorsement is attached to a policy, coverage is broadened beyond the standard coverage territory (US including its territories and possessions, Canada and Puerto Rico), to include any other country that will be specified in the Schedule subject to the limitation on where the suit is filed.

C00114

© ISO Properties Inc., 2001

**CG 24 24 10 01 – Amendment Of Coverage Territory – Worldwide Coverage With Specified Exceptions**

- When this endorsement is attached to a policy, coverage is broadened to anywhere in the world, subject to the limitation on where the suit is filed, with the exception of those countries that will be listed in the Schedule.

**CG 27 15 10 01 – Extended Reporting Period Endorsement For Employee Benefits Liability Coverage**

- This endorsement is available for purchase when canceling or non-renewing Employee Benefits Liability coverage and provides an extended period of five years during which a claim may be made by the insured.

**CG 28 05 10 01 – Personal Injury Liability Endorsement**

- This endorsement provides broadening in coverage over its prior provisions, as there will now be coverage for vicarious liability of other insureds who have no knowledge of a criminal act.

**CG 31 15 10 01 – Construction Project Management Protective Liability Coverage**

- When attached to an OCP policy, this new endorsement provides vicarious liability to the owner, contractor, architect or engineer or construction manager arising out of the work of the named insured contractor with an exception for professional services. Also, employees of the Named Insured will be covered for acts or omissions in connection with the general supervision of the contractor's operations.

- Paragraph G. Extension of Who Is An Insured has been revised to include the members of parent support groups and student groups.

**CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS – COVERAGE FORMS**

All General Liability coverage forms contain minor editorial revisions to provide for consistency among policies. In addition, these coverage forms have been revised to incorporate other various revisions in order to clarify coverage. Those latter changes to each individual coverage form are described below:

**CG 00 33 10 01 – Liquor Liability Coverage Form**
**CG 00 37 10 01 – Products/Completed Operations Liability Coverage Form**

- These coverage forms are revised to clarify that international waters or airspace are included under "coverage territory" but only if an "injury" occurs in the course of travel or transportation between any two of the following: US (including its territories and possessions), Puerto Rico and Canada.

**CG 00 01 10 01 – Commercial General Liability Coverage Form**
**CG 00 09 10 01 – Owners And Contractors Protective Liability Coverage Form**
**CG 00 33 10 01 – Liquor Liability Coverage Form**
**CG 00 37 10 01 – Products/Completed Operations Liability Coverage Form**

- These coverage forms have been revised to incorporate the "known injury or damage" provisions directly into the Insuring Agreement. Formerly, the Insuring Agreement in these coverage forms was amended by an endorsement to include the "known injury or damage" provisions.

**CG 00 01 10 01 – Commercial General Liability Coverage Form**
**CG 00 09 10 01 – Owners And Contractors Protective Liability Coverage Form**
**CG 00 33 10 01 – Liquor Liability Coverage Form**
**CG 00 37 10 01 – Products/Completed Operations Liability Coverage Form**

- The Legal Action Against Us Condition in these coverage forms has been revised to remove the phrase "obtained after an actual trial". This is because the definition of "suit" allows damages to be awarded through arbitration or other alternative dispute resolution, so the judgment can be obtained without an actual trial.

- The Premium Audit Condition has been revised to state that the due date for the audit premium is the date shown as the due date on the bill. This is in compliance with a National Association of Insurance Commissioners (NAIC) requirement.

**CG 00 01 10 01 – Commercial General Liability Coverage Form**

- The Aircraft, Auto Or Watercraft exclusion under Coverage A in these coverage forms is being revised to clarify the intent of this exclusion to apply even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.

C00115

CG 00 01 10 01 – Commercial General Liability Coverage Form
CG 00 09 10 01 – Owners And Contractors Protective Liability Coverage Form
CG 00 37 10 01 – Products/Completed Operations Liability Coverage Form

- The Damage To Property exclusion in these policies is revised to clarify that expenses incurred for repairs, etc. made on the insured's own property for any reason, including to avoid injury to a third party, will not be covered.

## CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS – ENDORSEMENTS

### CG 20 33 10 01 – Additional Insured – Owners Lessees Or Contractors – Automatic Status When Required In Construction Agreement With You

- We are revising these endorsements to clarify that completed operations coverage for an additional insured is excluded.

### CG 20 22 10 01 – Additional Insured – Church Members, Officers And Volunteer Workers

- We are revising this endorsement to delete the reference to volunteer workers since the provisions relating to volunteer workers have been incorporated into the Commercial General Liability Coverage Form. This doesn't decrease coverage because of the fact that, in the prior edition of the coverage form, coverage for volunteer workers was excluded.

### CG 20 35 10 01 – Additional Insured – Grantor Of Licenses – Automatic Status When Required By Licensor
### CG 20 36 10 01 – Additional Insured – Grantor Of Licenses

- These new endorsements will add a person or organization who grants licenses as an additional insured to the policy of a person or organization who makes and distributes products of that person or organization. CG 20 35 provides automatic status as an additional insured of grantors of licenses. CG 20 36 requires that the grantor of the license be named in the Schedule of the endorsement.

### CG 21 37 10 01 – Exclusion – Employees And Volunteer Workers As Insured (formerly Exclusion – Employees As Insureds)

- We are revising this endorsement to clarify that volunteer workers as well as employees are excluded as insureds.

### CG 21 37 10 01 – Exclusion – Employees And Volunteer Workers As Insureds
### CG 22 71 10 01 – Colleges Or Schools (Limited Form)
### CG 22 72 10 01 – Colleges Or Schools

- The Aircraft, Auto Or Watercraft exclusion in these endorsements is being revised to clarify that this exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.

## RESTRICTIONS IN COVERAGE – COVERAGE FORMS

### CG 00 42 10 01 Underground Storage Tank Policy Designated Tanks

- This policy is revised to exclude coverage for corrective action costs due to willful noncompliance with any statute, law, or ordinance for corrective action measures in the event of an underground storage tank incident.

## RESTRICTIONS IN COVERAGE – ENDORSEMENTS

### CG 21 66 10 01 Exclusion – Volunteer Workers

- When this endorsement is attached to a CGL, coverage is restricted by excluding volunteer workers as insureds from a CGL policy.

### CG 22 69 10 01 Druggists

- We are revising CG 22 69 to clarify that the types of pharmacist services that are not within the traditional duties of pharmacists like writing prescriptions, administering drugs and vaccinations, and performing blood tests are excluded.

C00116

© ISO Properties Inc., 2001

**CG 22 94 10 01 Exclusion – Damage To Work Performed By Subcontractors On Your Behalf**
**CG 22 95 10 01 Exclusion – Damage To Work Performed By Subcontractors On Your Behalf – Designated Sites Or Operations**

- When these new endorsements are attached to a CGL, coverage is restricted by excluding defects in "your work" from a CGL policy, even for work performed by a subcontractor.

**CG 22 98 10 01 Exclusion – Internet Service Providers And Internet Access Providers Errors And Omissions**
**CG 22 99 10 01 Professional Liability Exclusion – Web-Site Designers**

- These endorsements are introduced to exclude coverage for injury or damage arising out of the rendering or failure to render Internet service, Internet access, web-site designer or consultant services, as these professional services are not contemplated in the CGL coverage form.

**CG 28 12 10 01 Pesticide Or Herbicide Applicator Coverage**

- This endorsement is being revised to apply the exception to the exclusion to only paragraph 1(d) of exclusion j., so that the scope of coverage for pesticide or herbicide applicator should be the same under OCP policy as it is under the CGL policy.

## EMPLOYEE BENEFITS LIABILITY COVERAGE

If your renewal contains **Employee Benefits Liability Coverage** endorsement **CG 04 35** and your expiring policy contained **Employee Benefit Program Liability Coverage Form GECG 811**, then the following changes apply to your insurance:

## BROADENINGS OF COVERAGE

- An Extended Reporting Period provision has been added. If your policy is terminated, an Extended Reporting Period is available by endorsement for an extra charge and lasts for five years

- The definition of "employee benefits program" has been revised to specifically include dental, vision and hearing plans, flexible spending accounts, employee stock ownership plans, leave of absence programs, tuition assistance programs, and transportation and health club subsidies.

## CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS

- Editorial changes have been made throughout to achieve consistency among policy forms.

- Your Employee Benefits Liability Coverage is now provided by an endorsement that modifies the Commercial General Liability Coverage Part, and is no longer provided by a separate and distinct coverage part. Any pertinent information such as limits of insurance, Retroactive Date and premium will be displayed either in the Schedule of the endorsement or the Declarations for the Commercial General Liability Coverage Part.

- Investigation, settlement and defense provisions are no longer addressed separately and have been incorporated into the Insuring Agreement.

- The Insuring Agreement has been revised so that a claim will be deemed to be made at the earlier of the following times: When notice of claim is received and recorded by any insured or by us, whichever comes first; or When we make settlement.

- The Supplementary Payments provisions contained in the Commercial General Liability Coverage Form apply with respect to Employee Benefits Liability Coverage except for the cost of bail bonds and the provisions related to defense of the insured's indemnitees.

- "Bodily injury", "property damage" and "personal and advertising injury", as defined in the Commercial General Liability Coverage Form, are excluded from Employee Benefits Liability Coverage.

- An exclusion for Employment-Related Practices has been added to reinforce what is already the case, that insurance does not apply with respect to wrongful termination of employment, discrimination, or other employment-related practices.

- A Dishonest, Fraudulent, Criminal or Malicious Act exclusion has been added to emphasize the coverage intent to cover only negligent acts and to expressly preclude coverage for willful or reckless violation of any statute.

© ISO Properties Inc., 2001
C00117

- A "claim", because of an act, error or omission committed on or after the Retroactive Date and before the end of the policy period, that is received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

- An Inadequacy of Performance of Investment /Advice Given With Respect To Participation exclusion has been added and expressly excludes errors in providing information on past performance of investment vehicles.

- A Taxes, Fines or Penalties exclusion has been added.

- The Who Is An Insured provisions contained in the Commercial General Liability Coverage Form apply except as amended by the Employee Benefits Liability Coverage endorsement. Note that:

- Volunteer workers and real estate managers are not insureds.

- Your employees are insureds only if authorized to administer your "employee benefit programs".

- Any person or organization having proper temporary authorization to administer your "employee benefit program", if you die, are insureds, but only until your legal representative is appointed:

- Your legal representative is an insured, if you die, but only with respect to his or her duties as such.

- Coverage under the newly acquired or formed organization provisions does not apply to any act, error or omission that was committed before you acquired or formed the organization.

- The mobile equipment provisions contained in the Commercial General Liability Coverage Form do not apply

- The Conditions contained in the Commercial General Liability Coverage Form apply except as amended by the Employee Benefits Liability Coverage endorsement.

- The Definitions contained in the Commercial General Liability Coverage Form apply except as amended by the Employee Benefits Liability Coverage endorsement.

- A defined term "claim" has been added to explain that we mean a demand or suit for damages as a result of an act, error or omission. Such a claim must be made by an employee or an employee's dependents and beneficiaries.

- A defined term, "cafeteria plans" has been added and is used in the definition of "employee benefit program".

- A defined term, "employee" has been added which means a person actively employed, formerly employed, on leave of absence or disabled, or retired. Leased workers are included, but temporary workers are not included.

## RESTRICTIONS IN COVERAGE

- The Inadequacy of Performance of Investment /Advice Given With Respect To Participation exclusion has been added and applies to advice given with respect to participation or nonparticipation in any employee benefit plan.

- An Each Employee Limit applies in lieu of the former Each Claim Limit. This is the most we will pay for all damages sustained by one employee including damages sustained by the employee's dependents and beneficiaries. The deductible amount also applies to all damages sustained by one employee including damages sustained by the employee's dependents and beneficiaries.

- The definition of "administration" does not include interpreting the "employee benefits program".

C00118