# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAW MORTGAGE CORPORATION dba PATIOSOURCE & THE NATURAL TOUCH, a California Corporation,<br><br>Plaintiff,<br>vs.<br><br>PEERLESS INSURANCE COMPANY, et al.<br><br>Defendants. | CASE NO. 08cv0709 BTM(AJB)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff Shaw Mortgage Corporation dba Patiosource & The Natural Touch ("Plaintiff" or "Shaw Mortgage") and Defendant Peerless Insurance Company ("Defendant" or "Peerless") have filed cross-motions for partial summary judgment. For the reasons discussed below, Defendant's motion is **DENIED** and Plaintiff's motion is **DENIED**.

## I. FACTUAL BACKGROUND

Since 1995, Steve and Jan Shaw (the "Shaws") have operated the Natural Touch and Patio Source as joint operations. In 2003, the Shaws opened a showroom for the stores in a rented retail space located at 9050 Kenamar Drive, San Diego, CA. The Natural Touch sells decorations such as silk trees, plants, floral designs, and seasonal

1  decorations.  The Natural Touch also engages in home design work.  Patio Source
2  showcases and sells high-end indoor and outdoor furniture and accessories.  Both
3  businesses are seasonal - Natural Touch has increased production and sales during the
4  holiday and summer seasons, while Patio Source has increased sales in the spring and
5  summer seasons.

6        On or about December 26, 2005, a fire completely destroyed the store and its
7  contents.  Soon after the fire, the Shaws opened a temporary store in an attempt to keep
8  in business.  The Shaws explain that even though they were able to work out of a
9  temporary space, they suffered significant business losses due to the loss of, among
10 other things, inventory, customer lists, marketing materials, and vendor contacts.  The
11 Shaws also explain that they were unable to fully participate in the buying seasons of
12 spring and summer 2006 due to the lack of time, money and space, and the uncertainty
13 regarding where and when the stores would be reopened.

14       The Shaws' landlord rebuilt the destroyed building on Kenamar Drive, and The
15 Patio Source & The Natural Touch re-occupied the building in or about September 2006.
16 On September 10, 2006, the businesses had their grand reopening.

17
18       **II.  THE INSURANCE POLICY**

19       In September 2005, Peerless issued an insurance policy, Policy No. CBP-9772033
20 (the "Policy"), to Plaintiff for the policy period of September 22, 2005 to September 22,
21 2006.  (Ex. 1 to Amato Decl.)

22
23 **A.    Coverage**
24       The Policy's Business Income (and Extra Expense) Coverage Form provides: "We
25 will pay for the actual loss of Business Income you sustain due to the necessary
26 'suspension' of your 'operations' during the 'period of restoration.'" (Ex. 1 at Bates No.
27 00134.)
28       "Period of Restoration" is defined as the period of time that begins 72 hours after

the time of direct physical loss or damage, and ends on the earlier of: "(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (Ex. 1 at Bates No. 00142.)

With respect to determining the amount of business income loss, the Policy provides:

> c. We will reduce the amount of your:
>
>> (1) business income loss, other than Extra Expenses, to the extent you can resume your "operations" in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.
>> . . . .
>
> d. If you do not resume "operations," or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(Ex. 1 at Bates No. 00139.)

The Policy also provides coverage for "Extended Business Income":

> If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during that period that:
>
>> (a) Begins on the date property (except "finished stock") is actually repaired, rebuilt, or replaced and "operations" are resumed; and
>>
>> (b) Ends on the earlier of:
>>
>>> (i) The date you could restore your "operations," with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or
>>>
>>> (ii) 30 consecutive days after the date determined in (1)(a) above.

(Ex. 1 at Bates No. 00136.)

The Endorsement for Business Income Coverage - Actual Loss Sustained provides for the following Limits of Insurance: "We will pay for the actual loss of Business Income that you sustain that occurs within 12 consecutive months after the date of direct

physical loss or damage." (Ex. 1 at Bates No. 00117.) The Retail Platinum Endorsement ("Platinum Endorsement") modifies the Limits of Insurance as follows: "The coverage period limitation in this form of up to 12 consecutive months after the date of direct physical loss or damage is changed to up to 15 consecutive months after the date of direct physical loss or damage." (Ex. 1 at Bates No. 00168.)

**B. Payments**

Peerless has paid a total of $979,480.00 to Plaintiff for the loss of business income. Peerless paid Plaintiff loss of business income benefits through September 10, 2006, when Plaintiff had its grand reopening. Peerless determined that the "Period of Restoration" ceased upon Plaintiff's grand reopening. Peerless paid Plaintiff an additional 30 days of business income loss through October 10, 2006, under the Extended Business Income coverage of the Policy.

### III. DISCUSSION

The issue before the Court on the cross-motions for partial summary judgment is whether Plaintiff was entitled to payments for lost business income beyond October 10, 2006. Plaintiff contends that the Policy provides for the payment of lost business income until the resumption of "normal business operations" – i.e., operations at normal volume – and that, therefore, Plaintiff is entitled to payments through March 25, 2007 (15 months after the fire). In contrast, Peerless contends that the 15-month coverage period is subject to the "Period of Restoration," which ended when Plaintiff resumed business at the rebuilt property. According to Peerless, after the "Period of Restoration" ceased, Plaintiff was only entitled to 30 additional days of lost business income under the Extended Business Income provision. As discussed below, the Court finds that Peerless's interpretation of the Policy is the correct one, but that there is a triable issue of fact regarding when the Period of Restoration ended.

A.     Interpretation of Insurance Policies

Insurance policies are contracts to which the normal rules of contractual interpretation apply. Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264 (1992). The mutual intention of the parties is to be inferred, if possible, solely from the written provisions of the contract. AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 821 (1990). If the policy language is "clear and explicit," it governs. Bank of the West, 2 Cal. 4th at 1264.

The court must interpret policy provisions "in context and give effect to every part of the policy with each clause helping to interpret the other." Palmer v. Truck Ins. Exchange, 21 Cal. 4th 1109, 1115 (1999) (internal quotation marks and citations omitted). "A policy provision is ambiguous only if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole." Id. Only then does the court "invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." La Jolla Beach and Tennis Club, Inc. v. Industrial Indemnity Co., 9 Cal. 4th 27, 37 (1994).

B.     Analysis

1. Policy Interpretation

The Policy's Business Income (and Extra Expense) Coverage Form explains that coverage extends to "the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'" (Ex. 1 at Bates No. 00134.) "Period of Restoration" is defined, in turn, as the period of time that begins 72 hours after the time of direct physical loss or damage and ends on the earlier of: "(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (Ex. 1 at Bates No. 00142.)

1    Peerless takes the position that under either of the definitions for the cessation of
2 the "Period of Restoration," the "Period of Restoration" ended on September 10, 2006,
3 when Plaintiff had its grand reopening at the rebuilt location. Peerless argues that
4 although the Platinum Endorsement extended the coverage period to 15 consecutive
5 months after the date of direct physical loss or damage, the "Period of Restoration"
6 limitation still continued to apply.
7    Plaintiff agrees that the "Period of Restoration" requirement was not eliminated by
8 the Platinum Endorsement's extension of coverage to 15 months. However, Plaintiff
9 contends that the "Period of Restoration" continues until the *resumption of operations at*
10 *the normal volume*.
11    Plaintiff's interpretation is not supported by the policy language. The definition of
12 "Period of Restoration" refers to the earlier of (1) "[t]he date when the property at the
13 described premises should be repaired, rebuilt or replaced with reasonable speed and
14 similar quality"; or (2) "[t]he date when business is resumed at a new permanent location."
15 The first part of this definition does not require the resumption of operations at all. See
16 Lava Trading Inc., v. Hartford Fire Ins. Co., 365 F. Supp. 2d 434, 443 (S.D.N.Y. 2005)
17 (holding that the "period of restoration" ended by April 30, 2002, when Lava had replaced
18 the property at its 83rd floor offices and had occupied its new location, and explaining that
19 the fact that Lava's back up data center was not fully operational by this date did not
20 extend the "period of restoration"). The second part of the definition refers to "when
21 business is resumed" at the new permanent location. Under its ordinary meaning,
22 "business" generally means "trade" or "commercial transactions" – there is no quantitative
23 aspect to the definition. Oxford English Dictionary (2d ed. 1989). Nowhere does the
24 Policy define "business" as meaning "business at the same volume as before."
25    In support of its position, Plaintiff points to the following provision: "If you do not
26 resume 'operations,' or do not resume 'operations' as quickly as possible, we will pay
27 based on the length of time it would have taken to resume 'operations' as quickly as
28 possible." (Ex. 1 at Bates No. 00139.) However, nothing in this provision creates a duty

on the part of the insurer to pay lost business income until the resumption of operations *at the normal volume*. In fact, the preceding paragraph of the Policy explains:

> c. We will reduce the amount of your:
>
>   (1) business income loss, other than Extra Expenses, to the extent you can resume your "operations" *in whole or in part*, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(Emphasis added.) In other words, when calculating the amount of lost business income that the insured is entitled to, the insurer determines whether the insured was able to resume operations *in whole or in part* prior to the expiration of the period of restoration .

The Extended Business Income provision bolsters the Court's conclusion that the term "resume business" or "resume operations" as used in the Policy includes the resumption of business at a reduced volume. Extended Business Income coverage begins "on the date property . . . is actually repaired, rebuilt, or replaced and 'operations' are resumed" and ends on the earlier of: "(i) The date you could restore your 'operations,' with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or (ii) 30 consecutive days after the date determined in (1)(a) above." (Ex. 1 at Bates No. 00136.) The fact that the extended business income coverage *ends* when operations are restored to a normal level means that it *begins* when "operations are resumed" at a reduced volume.

Furthermore, there would be no need for Extended Business Income coverage if the Policy generally provided for business income loss payments until the restoration of operations to a normal level. Clearly, the purpose of the Extended Business Income coverage is to provide a cushion for the time after the "Period of Restoration" when the insured is back in business but still not doing business at the same volume as before.

In its moving papers, Plaintiff argues that the 30-day period for Extended Business Income coverage was extended to a 15 month-period (after the date of direct physical loss) by the Platinum Endorsement. Plaintiff points to Section E ("Optional Coverages"),

Paragraph 4 ("Extended Period of Indemnity") of the Business Income (and Extra Expense) Coverage Form, which states, "Under Paragraph A.5.c., Extended Business Income, the number '30' in Subparagraphs (1)(b) and (2)(b) is replaced by the number shown in the Declarations for this Optional Coverage." (Ex. 1 at Bates No. 00142.) According to Plaintiff, the Platinum Endorsement was a Declaration for this Optional Coverage.

Plaintiff's argument is unpersuasive. The Platinum Endorsement modifies the Limits of Insurance set forth in the Endorsement for Business Income Coverage - Actual Loss Sustained, as follows: "The coverage period limitation in this form of up to 12 consecutive months after the date of direct physical loss or damage is changed to up to 15 consecutive months after the date of direct physical loss or damage." (Ex. 1 at Bates No. 00168.) This provision simply expands the coverage period for business Income loss. Nothing in this provision eliminates the "Period of Restoration" limitation or other requirements for recovery. Furthermore, neither this provision nor any other language in the Platinum Endorsement mentions an extension of the 30-day period for the recovery of Extended Business Income.

Supplemental briefing by the parties confirms that Plaintiff did not purchase the optional coverage to extend the period of liability for the Extended Business Income. (Def.'s Supp. Mem. of P. & A.) Indeed, Plaintiff now argues that the Extended Period of Indemnity clause does not apply. (Supp. Affidavit of Jeff Byroads, ¶ 4.)

In summary, the Policy language clearly limits the recovery of business income loss to the "Period of Restoration." The period of recovery ends either when the Period of Restoration ceases or upon the expiration of the 15-month period set forth in the Platinum Endorsement, *whichever comes first*. The Policy also clearly limits the period of recovery for Extended Business Income to the earlier of the date when Plaintiff's operations were restored to a normal level or 30 days after the resumption of business at the repaired/rebuilt location. Because there is no ambiguity in the Policy on these points, the insured's expectation of coverage does not come into play. La Jolla Beach and Tennis

1 Club, Inc., 9 Cal. 4th at 37.

### 2. Estoppel/Reformation

An insurance agent's representations regarding coverage may have the effect of expanding the coverage beyond what is actually provided by the policy, even in the absence of ambiguity, under the theories of estoppel, see Hartford Fire Ins. Co. v. Spartan Realty Int'l., Inc., 196 Cal. App. 3d 1320, 1325 (1987), or reformation, see R&B Auto Ctr., Inc. v. Farmers Group, Inc., 140 Cal. App. 4th 327, 339 (2006).  Jeff Byroads, an agent for Wateridge Insurance Services who sold the Policy to Plaintiff, states that it was Plaintiff's intention and his intention to provide coverage "that would make the Shaws whole in the event of a covered interruption until the Shaws could return to normal business operations."  (Byroads Decl. (Pl.'s Ex. 6) ¶ 4.)  Byroads also declares: "I ordered the Policy and the Endorsement with the intention to adequately insure the Shaws so that in the event of a covered peril, they would be restored to the same position as they occupied prior to the disaster," and "I ordered the Policy and the Endorsement with the intention to provide coverage for extended business income loss for up to a fifteen month period of time."  (Id. at ¶¶ 5-6.)

Byroads' general statements about his intentions are insufficient to support a finding of estoppel or reformation.  Byroads does not claim that he made any specific representations to Plaintiff that (1) regardless of the "Period of Restoration" limitation, Plaintiff would be covered for business income loss throughout the 15 month period until normal operations were restored; or (2) the 30-day time period for the recovery of Extended Business Income would be extended until normal operations were resumed. Therefore, Plaintiff has not established that it reasonably relied on representations by Peerless's agent that the Policy would cover lost business income up until the time Plaintiff's operations were restored to a normal level.

///

///

### 3. Application of Policy to Facts of this Case

Although the Court agrees with Peerless's interpretation of the Policy, the Court finds that there is a triable issue regarding when the Period of Restoration expired. The definition of "Period of Restoration" refers to the earlier of (1) "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality"; or (2) "[t]he date when business is resumed at a new permanent location."

It is unclear whether the second part of the definition applies when business is resumed at a new building at the *same* geographical location, or whether business must be resumed at a *different* geographical location. The parties did not brief this issue. Therefore, the Court looks to the first part of the definition.

Under the first part of the definition, the pertinent inquiry is when the property at the described premises should be repaired, rebuilt, or replaced. In addition to the building, Plaintiff claims that the fire destroyed merchandise, back stock, raw supplies, marketing materials, photographs, displays, vendor contacts, customer lists, and other valuable papers. (Plaintiffs' Decl. ¶ 13.) It is unclear from the record before the Court whether the items listed by Plaintiff constitute covered property under the Policy and, if so, when such property reasonably should have been replaced. It is possible that Plaintiff resumed business before such time that its covered property was or should have been replaced.[1] Therefore, there is a triable issue of material fact regarding whether the Period of Restoration ended before, at the same time as, or after the grand reopening on September 10, 2006.

///

///

///

///

---

[1] The Court notes that it interprets the Policy as referring to the repair, rebuilding, or replacement of the property *that was destroyed by the fire*, not stock or other property that could have been obtained had the fire not occurred.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's motion for partial summary judgment is **DENIED** and Defendant Peerless Insurance Company's motion for partial summary judgment is **DENIED**.  Counsel for the parties shall appear before Magistrate Judge Battaglia at the Case Management Conference currently scheduled for **May 26, 2009 at 9:30 a.m.**

**IT IS SO ORDERED.**

DATED:  May 11, 2009

*[signature]*

Honorable Barry Ted Moskowitz
United States District Judge